1
2
3
4
5
6
7
8
9
10                          **UNITED STATES DISTRICT COURT**

11                              **DISTRICT OF NEVADA**

12

13  SANDRA D. O'NEAL,                    )
                                         )
14               Plaintiff(s),           )        Case No. 2:16-cv-00318-GMN-NJK
                                         )
15  vs.                                  )        REPORT AND
                                         )        RECOMMENDATION
16  CAROLYN W. COLVIN, ACTING            )
    COMMISSIONER OF SOCIAL SECURITY,     )
17               Defendant(s).           )        (Docket Nos. 17, 21)
                                         )
18  _____ )

19          This case involves judicial review of administrative action by the Commissioner of Social

20  Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and

21  supplemental security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C.

22  Ch. 7.  Currently pending before the Court is Plaintiff's Motion to Remand to Social Security

23  Administration.  Docket No. 17.  The Commissioner filed a response to Plaintiff's motion and a

24  cross-motion to affirm.  Docket Nos. 21, 22.  No reply was filed.  *See* Docket.  This action was

25  referred to the undersigned magistrate judge for a report of findings and recommendation.

26  **I.    STANDARDS**

27          A.    Judicial Standard of Review

28          42 U.S.C. § 405(g) governs the Court's review of administrative decisions in social security

disability benefits cases. *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id.* To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *See, e.g., Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether substantial evidence supports the Commissioner's findings, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2003). When the evidence supports more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether substantial evidence supports the final decision.

It is incumbent on the Administrative Law Judge ("ALJ") to make specific findings so that the Court does not speculate as to the basis of the findings when determining if substantial evidence

1  supports the Commissioner's decision. The ALJ's findings should be as comprehensive and

2  analytical as feasible and, where appropriate, should include a statement of subordinate factual

3  foundations on which the ultimate factual conclusions are based, so that a reviewing court may know

4  the basis for the decision. *See, e.g.*, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

5        B.    Disability Evaluation Process

6        The individual seeking disability benefits bears the initial burden of proving disability.

7  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must

8  demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

9  determinable physical or mental impairment which can be expected . . . to last for a continuous

10  period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

11  must provide "specific medical evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R.

12  § 404.1514. If the individual establishes an inability to perform his prior work, then the burden

13  shifts to the Commissioner to show that the individual can perform other substantial gainful work

14  that exists in the national economy. *Reddick*, 157 F.3d at 721.

15        The ALJ follows a five-step sequential evaluation process in determining whether an

16  individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520,

17  416.920). If at any step the ALJ determines that he can make a finding of disability or nondisability,

18  a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540

19  U.S. 20, 24 (2003); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

20        The first step requires the ALJ to determine whether the individual is currently engaging in

21  substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as

22  work activity that is both substantial and gainful; it involves doing significant physical or mental

23  activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual

24  is currently engaging in SGA, then a finding of not disabled is made. If the individual is not

25  engaging in SGA, then the analysis proceeds to the second step.

26

27

28                                      3

1    The second step addresses whether the individual has a medically determinable impairment

2    that is severe or a combination of impairments that significantly limits her from performing basic

3    work activities.   20 C.F.R. §§ 404.1520(c), 416.920(c).   An impairment or combination of

4    impairments is not severe when medical and other evidence establish only a slight abnormality or

5    a combination of slight abnormalities that would have no more than a minimal effect on the

6    individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-

7    28 and 96-3p.[1]  If the individual does not have a severe medically determinable impairment or

8    combination of impairments, then a finding of not disabled is made. If the individual has a severe

9    medically determinable impairment or combination of impairments, then the analysis proceeds to

10   the third step.

11   The third step requires the ALJ to determine whether the individual's impairment or

12   combination of impairments meets or medically equals the criteria of an impairment listed in 20

13   C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,

14   416.920(d), 416.925, 416.926.  If the individual's impairment or combination of impairments meets

15   or equals the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509,

16   416.909), then a finding of disabled is made.   20 C.F.R. §§ 404.1520(h), 416.920(h).   If the

17   individual's impairment or combination of impairments does not meet or equal the criteria of a

18   listing or meet the duration requirement, then the analysis proceeds to the next step.

19   Before considering step four of the sequential evaluation process, the ALJ must first

20   determine the individual's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e),

21   416.920(e).  The RFC is a function-by-function assessment of the individual's ability to do physical

22   and mental work-related activities on a sustained basis despite limitations from impairments.  SSR

23   96-8p.  In making this finding, the ALJ must consider all of the symptoms, including pain, and the

24

---

25        [1] SSRs constitute the Social Security Administration's official interpretations of the statute
     it administers and its regulations.  *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th
26   Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to some deference as long as they
27   are consistent with the Social Security Act and regulations.  *Bray*, 554 F.3d at 1224.

28                                                      4

extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p.  To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    BACKGROUND**

A.    Procedural History

On November 22, 2011, Plaintiff filed applications for a period of disability and disability

insurance benefits and supplemental social security income, alleging a disability onset date of April 30, 2010. *See* Administrative Record ("A.R.") 165-173. Plaintiff's claims were initially denied on April 5, 2012, and upon reconsideration on July 25, 2013. A.R. 91-95, 117-119. On August 19, 2013, Plaintiff filed a request for a hearing before an ALJ. A.R. 150-151. On June 18, 2014, Plaintiff, Plaintiff's attorney, and a vocational expert appeared for a hearing before ALJ Christopher R. Inama. A.R. 55-85. On August 15, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not under a disability, as defined by the Social Security Act, from the alleged onset date through the date of his decision. A.R. 40-50. The ALJ's decision became the Commissioner's final decision when, after considering additional evidence presented by Plaintiff's attorney, the Appeals Council denied Plaintiff's request for review on December 21, 2015. A.R. 1-4.

On February 17, 2016, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). *See* Docket No. 1-1.

B.    The Decision Below

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920, and issued an unfavorable decision on August 15, 2014. A.R. 40-50. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2010, the alleged onset date. A.R. 42. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (with reference to "long history" of spinal stenosis, and mild-to-moderate disc space narrowing at the C5-6 level, without neurological deficit), anxiety disorder, and affective disorder. A.R. 42-43. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 43-44.

The ALJ found that Plaintiff had the RFC to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), except she was able to understand, remember, and carry out simple, routine tasks in two-hour increments, on a sustained basis, in the workplace. A.R. 44-48. The ALJ further determined that Plaintiff could have no more than occasional interaction with supervisors

1   and co-workers and occasional public contact.  *Id.*  At step four, the ALJ found that Plaintiff was
2   unable to perform any PRW as a room rental agent, insulation installer, or chief security guard.  A.R.
3   48.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and
4   RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform.  A.R.
5   48-49.  Based on all of these findings, the ALJ found Plaintiff not disabled and denied her
6   applications for a period of disability and disability insurance benefits and supplemental social
7   security income.  A.R. 49-50.

8   **III.    ANALYSIS AND FINDINGS**

9        Plaintiff's claim rests primarily on allegations of back pain and mental impairment.  *See, e.g.*,
10  A.R. 45.  Plaintiff makes four arguments in support of remand.  *See* Docket No. 17.  First, Plaintiff
11  submits that state agency reviewing physician Dr. Sherman's opinion regarding her physical
12  limitations does not rest on substantial evidence.  *Id.* at 6-7.  Second, Plaintiff contends that new
13  evidence her attorney submitted to the Appeals Council invalidates the ALJ's opinion.  *Id.* at 7-9.
14  Third, Plaintiff submits that, regarding Plaintiff's mental RFC, the ALJ's RFC assessment and the
15  hypothetical he posed to the vocational expert did not properly incorporate the opinion of state
16  agency reviewing physician Dr. Roldan, whose findings the ALJ gave great weight.  *Id.* at 9-10.
17  Finally, Plaintiff submits that the ALJ failed to properly consider her testimony.  *Id.* at 11-13.  The
18  Court will address each argument in turn.

19       A.    Dr. Sherman's Opinion

20       Plaintiff submits that medical reports from her treating physician, Dr. Ezeanolue,
21  demonstrate that Dr. Sherman's opinion regarding her physical limitations does not rest on
22  substantial evidence.  *Id.* at 6-7.[2]  The Commissioner responds that the ALJ properly gave weight
23  to Dr. Sherman's opinion.  Docket No. 21 at 3-4.  The Commissioner submits that Dr. Sherman's
24  x-rays were the only objective studies in the record at the time of the ALJ's decision; and that Dr.

25

26       [2] Unlike the medical reports referenced in Section III-B, *infra*, the medical reports at issue
27  here were before the ALJ.  *See id.*

28                                                 7

1  Sherman's examination of Plaintiff supported his finding. *Id.* at 4. The Court finds that the record

2  supports the Commissioner's argument.

3      Additionally, in asserting that Dr. Sherman's opinion does not rest on substantial evidence,

4  Plaintiff relies on *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985), *Wier ex rel. Wier v. Heckler*,

5  734 F.2d 955, 963-64 (3d Cir. 1984), and *Orn v. Astrue*, 495 F.3d 625, 633-34 (9th Cir. 2007).

6  Docket No. 17 at 6-7. All of these cases relate to how various ALJs weighed the medical evidence

7  before them, not whether the medical reports themselves rested on substantial evidence. *Orn*, 495

8  F.3d at 633-34; *Stone*, 761 F.3d at 532; *Wier*, 734 F.2d at 963-64. Thus, the Court finds Plaintiff's

9  argument unpersuasive.

10     B.    New Evidence

11     Plaintiff submits that new documentation from one of her treating physicians, Dr. Ezeanolue,

12  submitted for the first time to the Appeals Council, invalidates the ALJ's decision. Docket No. 17

13  at 7-9. Specifically, Plaintiff submits that the new documentation demonstrates that the opinion of

14  consultative examiner Dr. Sherman regarding Plaintiff's physical limitations does not constitute

15  substantial evidence to support the ALJ's physical RFC assessment. *Id.* The Commissioner

16  responds that, *inter alia*, the ALJ properly weighed Dr. Sherman's opinion and Plaintiff's new

17  evidence does not undermine the ALJ's findings. Docket No. 21 at 3-10.

18     The Court generally lacks jurisdiction to review the Appeals Council's decision. *Taylor v.

19  Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Nonetheless, the Ninth Circuit

20  has held that "when a claimant submits evidence for the first time to the Appeals Council, which

21  considers that evidence in denying review of the ALJ's decision, the new evidence is part of the

22  administrative record, which the district court must consider in determining whether the

23  Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec.

24  Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). The Court may "consider [a] physician's opinion,

25  which was rejected by the Appeals Council, to determine whether, in light of the record as a whole,

26  the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor*, 659

27

28                                                8

F.3d at 1232 (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)).  Thus, the Court must determine whether the ALJ could properly reach the same conclusion regarding Plaintiff's physical RFC assessment if he considered Dr. Sherman's opinion in conjunction with the new documentation, which consists of an MRI report, office visit notes, and a disability evaluation form. A.R. 521-531.

When assigning weight and resolving conflicts in medical testimony, the Ninth Circuit distinguishes between the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; and (3) neither treating nor examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  Even when not controlling, such opinions are entitled to deference and must be weighed properly pursuant to applicable regulations. *See, e.g.*, *id.*  Nonetheless, the opinion of a treating physician is not necessarily conclusive as to the existence of an impairment or the ultimate issue of a claimant's disability. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal citation omitted).

"Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then *solely the province of the ALJ* to resolve the conflict." *Andrews*, 53 F.3d at 1041 (emphasis supplied) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  "Where, on the other hand, a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Andrews*, 53 F.3d at 1041 (citing *Magallanes*, 8 F.3d at 751, 755; *Ramirez*, 8 F.3d at 1449).

1    In March 2012, Dr. Sherman took x-rays of Plaintiff's lumbar, cervical, and thoracic spine,

2    which revealed mild-to-moderate disc space narrowing at the C5-6 level, with no other

3    abnormalities. A.R. 354. Based on these x-rays and a physical examination of Plaintiff, Dr.

4    Sherman opined that Plaintiff could sit, stand, and walk for six hours in an eight-hour workday; did

5    not require a cane, brace, or assistive device to ambulate; could frequently lift 25 pounds and

6    occasionally lift 50 pounds; and had no restrictions regarding forward bending at the waist,

7    squatting, kneeling, reaching, pushing, pulling, grasping or fine manipulation activities with the

8    hands. *Id.*

9    On July 11, 2014, Dr. Ezeanolue took an MRI of Plaintiff's cervical spine, which revealed

10    some physical abnormalities that he attributed to multiple level disc degenerative disease. A.R. 521-

11    522, 527. Plaintiff also visited Dr. Ezeanolue's office on August 5, 2014. A.R. 523-526. Dr.

12    Ezeanolue did not run any medical tests at that visit, but rather examined and observed Plaintiff, and

13    took note of her subjective complaints. *See id.* On November 24, 2014, Dr. Ezeanolue filled out

14    a residual functional capacity questionnaire. A.R. 527-531. Dr. Ezeanolue opined that, *inter alia*,

15    Plaintiff could stand for no more than about two hours in an eight-hour workday; could sit for no

16    more than about four hours in an eight-hour workday; must use an assistive device while standing

17    or walking; could frequently lift 10 or fewer pounds; could occasionally lift 20 pounds; could never

18    lift 50 pounds; possibly had significant limitations in repetitive reaching, handling, or fingering; and

19    would miss work more than three times a month because of her impairments. A.R. 529-531.

20    As the above discussion demonstrates, the opinions of Drs. Sherman and Ezeanolue are

21    contradictory and based, at least in part, on independent clinical findings. Thus, Plaintiff's new

22    evidence does not undermine the ALJ's decision, as the ALJ would have had sole discretion to

23    resolve the conflict and Dr. Sherman's opinion would have constituted substantial evidence.

24    *Andrews*, 53 F.3d at 1041. However, even assuming, *arguendo*, that the doctors' opinions do not

25    rest on independent clinical findings, a review of Dr. Ezeanolue's residual functional capacity form

26    reveals that, apart from the MRI, the only bases for his opinion are Plaintiff's subjective complaints.

27

28

1    *See* A.R. 527-531.  As the Court will explain *infra* in Section III-C, the Court finds that the ALJ

2    properly found Plaintiff's testimony less than credible.  Thus, the Court finds that, despite the fact

3    that Dr. Ezeanolue's opinion is based in part on more recent medical tests, the ALJ could properly

4    afford it less weight because it is based primarily on subjective testimony that the ALJ properly

5    found to be of limited credibility.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

6    (internal citation omitted).  Thus, the Court finds that, even in light of Plaintiff's new evidence, the

7    ALJ's physical RFC assessment still rests on substantial evidence.[3]

8                     C.    Mental RFC and Hypothetical

9         Plaintiff submits that the ALJ failed to properly incorporate the opinions of state agency

10   reviewing physician Dr. Roldan regarding Plaintiff's limitations in concentration, persistence, and

11   social interaction into his mental RFC assessment and hypothetical to the vocational expert who

12   testified at Plaintiff's hearing.  Docket No. 17 at 9-10.  The Commissioner responds that, *inter alia*,

13   the ALJ properly interpreted and accommodated Dr. Roldan's opinions into his mental RFC

14   assessment and hypothetical.  Docket No. 21 at 10-13.

15        "[T]he Commissioner, through the ALJ, must determine the claimant's 'residual functional

16   capacity,' a summary of what the claimant is capable of doing."  *Valentine v. Comm'r, Soc. Sec.*

17   *Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  "The ALJ may . . . pose to a vocational expert a

18   hypothetical incorporating the residual functional capacity determination ('RFC'); the expert then

19   opines on what kind of work someone with the limitations of the claimant could hypothetically do."

20   *Id.* (internal citation omitted).

21

22            [3] The Court also notes that Plaintiff has not explained why she did not present the MRI report
23   to the ALJ after the hearing, as the ALJ had not yet issued his decision when Plaintiff obtained the
     MRI results.  *See* A.R. 37-50 (unfavorable decision dated August 15, 2014); A.R. 521-522 (MRI
24   report dated July 11, 2014); Docket No. 17.  "Reviewing administrative records supplemented with
     information the ALJ did not consider mires the federal courts in an Alice in Wonderland exercise
25   of pretending that evidence the real ALJ didn't know existed was really before him."  *Mooney v.*
     *Comm'r of Soc. Sec. Admin.*, 2012 WL 2150855, at *10 n.12 (C.D. Cal. June 12, 2012) (internal
26   quotation marks omitted) (quoting *Angst v. Astrue*, 351 Fed. App'x. 227, 229-30 (9th Cir. 2009)
27   (Rymer, J., concurring))).

28                                          11

1    "[A]n ALJ's assessment of a claimant adequately captures restrictions related to

2    concentration, persistence, or pace where the assessment is consistent with restrictions identified in

3    the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (internal

4    citation omitted).  Similarly, an ALJ's hypothetical to a vocational expert must adequately reflect

5    all of the claimant's limitations. *Cf. Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) ("Because

6    the hypothetical posed by the ALJ to the vocational expert did not reflect all of [the claimant's]

7    limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision").

8    Here, Dr. Roldan opined that, *inter alia*, Plaintiff had moderate limitations in concentration,

9    persistence, and in social interaction.  A.R. 470-471.  Dr. Roldan further opined that Plaintiff was

10   moderately limited in her ability to respond to changes in the work setting, and in her ability to set

11   realistic goals or make plans independently of others.  A.R. 471.  When asked to summarize in

12   narrative form her opinions regarding concentration and persistence, Dr. Roldan wrote: "The

13   claimant is able to understand, remember, and carry out simple, routine tasks in 2 hour increments

14   on a sustained basis in the workplace."  A.R. 470.

15   With respect to Plaintiff's mental impairments, the ALJ gave the greatest weight to Dr.

16   Roldan's opinions.  A.R. 48.  As noted above, the ALJ determined that Plaintiff had the RFC to

17   perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), except she was able to

18   understand, remember, and carry out simple, routine tasks in two-hour increments, on a sustained

19   basis, in the workplace.  A.R. 44-48.  The ALJ further determined that Plaintiff could have no more

20   than occasional interaction with supervisors and co-workers and occasional public contact.  *Id.*

21   Similarly, in summarizing Plaintiff's psychological limitations in his hypothetical, the ALJ asked

22   the vocational expert to envision someone who is "able to understand remember, and carry out . .

23   . simple, routine tasks in two-hour increments on a sustained basis in the workplace," and can have

24   "occasional interaction with supervisors, coworkers," and the public.  A.R. 81.

25   The Court finds that the ALJ adequately incorporated Plaintiff's psychological limitations

26   into his RFC assessment and hypothetical.  The ALJ's RFC assessment closely tracks Dr. Roldan's

27

28                                                    12

summary of her opinions regarding concentration and persistence, and notes that Plaintiff can only have limited interaction with others.  *See* A.R. 44-48, 470.  Additionally, by limiting Plaintiff to simple, routine tasks, the ALJ's RFC assessment accommodates Dr. Roldan's opinion regarding her limited ability to set realistic work goals.  Further, as the Commissioner notes, the limitations identified in the ALJ's RFC assessment also adequately capture Plaintiff's limited adaptability to changes in the workplace.  *See* Docket No. 21 at 11 (likening this case to *Rogers v. Comm'r*, 490 Fed. App'x 15, 17-18 (9th Cir. 2012)).  As a result, the Court finds that the ALJ's hypothetical to the vocational expert, which followed the written RFC assessment nearly word-for-word, was also proper.  The ALJ, therefore, did not err in articulating his RFC assessment and hypothetical.

### D.  Plaintiff's Credibility

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for finding her testimony "not entirely credible," A.R. 45, and thus improperly discounted her subjective complaints.  Docket No. 17 at 11-13.  The Commissioner responds that the ALJ properly discounted Plaintiff's subjective testimony though, the Commissioner submits, the ALJ did give Plaintiff's testimony at least some weight in formulating his RFC assessment.  Docket No. 21 at 13-18.

The ALJ is required to engage in a two-step analysis to evaluate a claimant's credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and (2) if the individual has satisfied the first step of the test with no evidence of malingering, the ALJ may only reject the individual's testimony about the severity of the symptoms by giving specific, clear, and convincing reasons for the rejection.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims.  *See id.* at 592.  "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

1   treatment." *Orn v. Astrue*, 495 F.3d at 636 (internal quotation marks and citations omitted).

2       The ALJ found Plaintiff's testimony not entirely credible because the record reflected almost

3   no history of mental impairments or mental health treatment and contained little objective evidence

4   to corroborate the physical limitations Plaintiff alleged. A.R. 45-47.  Additionally, the ALJ found

5   that Plaintiff's long work history undermined the allegation that she has experienced severe pain

6   since age 15. A.R. 46. The Court finds that the ALJ did not err in making an adverse credibility

7   determination based on these considerations.

8       Regarding the lack of mental impairments and mental health treatment, the record supports

9   the ALJ's finding and the case law supports his decision to consider this factor.  The record reveals

10  no history of mental health treatment other than a hospitalization in 2010, following a suicide

11  attempt that appears to have been related to situational stressors. A.R. 327-332.  Similarly, other

12  than a two-week prescription for Celexa following Plaintiff's suicide attempt, the record reveals no

13  psychiatric medical treatment. A.R. 332. Further, despite alleging lifelong mental health problems

14  to consultative examiner Dr. Zucker, Plaintiff admitted that she was not receiving mental health

15  treatment, and did not provide any explanation as to why not. A.R. 439. Given the fact that alleged

16  mental impairments form a significant part of Plaintiff's claim for disability, her lack of treatment

17  for psychiatric or psychological disorders undermines her credibility.  Additionally, it was proper

18  for the ALJ to consider Plaintiff's "unexplained or inadequately explained failure to seek treatment."

19  *Tommassetti*, 533 F.3d at 1039 (internal quotations and citation omitted).

20      Regarding the lack of objective evidence corroborating Plaintiff's allegations of debilitating

21  pain, the record supports the ALJ's finding and the case law supports his decision to consider this

22  factor.  Plaintiff alleged, for example, that she requires a walker due to debilitating physical

23  limitations. *See, e.g.*, A.R. 69.  However, the record suggests that the walker was prescribed for

24  short-term use after a fall, and that it is not medically necessary for long-term use, which is

25  consistent with Dr. Sherman's assessment that Plaintiff does not need it to ambulate. *See, e.g.*, A.R.

26  46, 353-54, 411.  Similarly, Plaintiff's medical records reveal several mostly normal physical

27

28                                                14

examinations and suggest that her symptoms are well-controlled on pain medication. *See, e.g.*, A.R. 349-350, 353-354, 374-375, 384-385, 413, 479, 484, 489, 491.  Additionally, it was proper for the ALJ to consider the lack of objective evidence among other factors. *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

Regarding Plaintiff's work history, the record supports the ALJ's finding and the case law supports his decision to consider this factor.  Despite alleging severe back pain beginning at age 15, Plaintiff has a fairly fruitful work history, which includes physically demanding jobs in security and construction. *See* A.R. 62-63 (Plaintiff's testimony about construction and security jobs); A.R. 160-164 (work history); A.R. 497 (allegations of pain since age 15).  Additionally, it was appropriate for the ALJ to consider this factor among others. *See, e.g.*, *Marsh v.* Colvin, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (permissible to consider work history in assessing credibility); *cf. Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (internal citation omitted) (upholding finding that a claimant's back problems did not render her disabled because, among other factors "substantial evidence indicated that the condition of [the claimant's] back had remained constant for a number of years and that her back problems had not prevented her from working over that time").  Thus, the Court finds that the ALJ gave specific, clear, and convincing reasons, supported by substantial evidence, to support his determination that Plaintiff was less than credible.

## IV.   CONCLUSION

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion.  Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is free from legal error and supported by substantial evidence under 42 U.S.C. § 405(g).

Based on the foregoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion to Remand (Docket No. 17) be **DENIED** and that the Commissioner's Cross-Motion to Affirm (Docket No. 21) be **GRANTED**.

IT IS SO ORDERED.

DATED:    March 21, 2017.

_____
NANCY J. KOPPE
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).